UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                        )
M2MULTIHULL, LLC,                       )
                                        )
        Appellant,                      )
                                        )
        v.                              )    C.A. No. 12-617 S
                                        )
JOCK WEST,                              )
                                        )
        Appellee.                       )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

        This case comes before the Court on Appellant M2Multihull, LLC's ("M2M") appeal from the Bankruptcy Court's August 16, 2012 order granting Appellee Jock West's ("West") motion to dismiss. The sole issue raised on appeal is whether M2M alleged facts sufficient to state a claim that West's debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

I.  Facts

        The complaint alleges that, in July 2008, West made statements to M2M, and forwarded documents to M2M containing statements, which represented the contemporaneous value of a boat called Showtime as being between $950,000 and $4,250,000. (App. Part 1 to Appellant's Br. (Second Am. Compl.) ¶ 7, ECF No. 32-2.)  In support of this allegation, M2M cites certain documents, attached as an exhibit to the complaint, which it

1

claims were provided to it by West.  M2M further alleges that, when West made these statements and forwarded these documents, he was aware that Showtime had an actual value of only $350,000. (Id. at ¶ 9.)  Based upon West's representations, M2M lent funds to him.  (Id. at ¶ 10.)  These debts were memorialized by two promissory notes.  (Id. at ¶¶ 11, 19.)  On September 18, 2009, M2M issued a demand to West for repayment of the sums owed under both notes.  (Id. at ¶¶ 15, 21.)  West has, however, failed to tender payment.  (Id. at ¶¶ 32, 38.)

After West petitioned for Chapter 7 Bankruptcy, M2M filed a complaint alleging that his debts are non-dischargeable on the grounds that they were obtained by fraud.  The Bankruptcy Court subsequently granted West's motion to dismiss the complaint for failure to state a claim.

II.  Discussion

A.   Merits of the Motion to Dismiss

"A bankruptcy court's determination that a proceeding should be dismissed is a legal conclusion subject to de novo review."  In re Burrell-Richardson, 356 B.R. 797, 800 (B.A.P. 1st Cir. 2006).  However, in exercising its appellate jurisdiction, a district court "is normally limited to the evidentiary record compiled in the bankruptcy court."  In re Colonial Mortg. Bankers Corp., 186 F.3d 46, 49 (1st Cir. 1999).

2

The bankruptcy title of the United States Code provides that a debt is non-dischargeable to the extent it is obtained by "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  Here, M2M argues that West's debt falls within this provision.  In order to be successful on this claim, M2M would have to show (1) that West made "a false representation" (2) "with fraudulent intent, i.e., with 'scienter,'" (3) intending "to induce [M2M] to rely on the misrepresentation," and (4) that the misrepresentation did "induce reliance," (5) which was "justifiable" and (6) caused damage or pecuniary loss.  Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).[1]  The parties agree that the heightened pleading standard set out in Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7009, applies to M2M's allegations.  See In re Zutrau, 482 B.R. 704, 710 (Bankr. D. Mass. 2012) ("This basis of

---

[1]  In its memorandum, M2M relies heavily on decisions applying Rhode Island state fraud law.  This reliance on state law is misplaced.  The First Circuit has instructed that 11 U.S.C. § 523(a)(2)(A) "incorporate[s] the 'general common law of torts,' i.e., the 'dominant consensus of common-law jurisdictions, rather than the law of any particular State.'" Palmacci v. Umpierrez, 121 F.3d 781, 786 n.2 (1st Cir. 1997) (quoting Field v. Mans, 516 U.S. 59, 69 & n.9 (1995)); see also In re Woodford, 403 B.R. 177, 188 (Bankr. D. Mass. 2009) ("[T]he determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law."), aff'd, 418 B.R. 644 (B.A.P. 1st Cir. 2009).

nondischargeability sounds in fraud and therefore must be pleaded with particularity.").

A close reading of the complaint reveals that M2M's claim is predicated upon two sets of allegedly false statements: (1) statements made directly by West to M2M and (2) statements contained in certain documents that West forwarded to M2M.[2] In ruling on the motion to dismiss, however, the Bankruptcy Court only addressed the latter group of statements.

### 1.   Direct Statements

West argues that, to the extent M2M's complaint refers to representations other than those contained in the documents attached thereto, it has failed to plead those statements with sufficient particularity to satisfy Rule 9(b). That provision requires a party alleging fraud to "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied "by an averment of the who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (internal quotation marks omitted); see also Garcia-Monagas v. De Arellano, 674 F.3d 45, 54 n.11 (1st Cir. 2012) (holding that,

---

[2]   At oral argument, M2M confirmed that it is not pressing the fraudulent conveyance claim it raised below.

in order to meet the requirements of Rule 9(b), "the pleader
must set out the time, place, and content of the alleged
misrepresentation with specificity" (internal quotation marks
omitted)).

In the present case, the complaint provides few details
about the allegedly fraudulent statements made directly by West
to M2M.  Those statements were made "[o]n or about July 2008,"
and they represented the contemporaneous value of Showtime as
being between $950,000 and $4,250,000.  Additionally, reading
paragraph seven in conjunction with paragraph ten, it appears
that the statements were made by West to Paul Mihailides, the
manager of M2M.  No more specifics regarding the timeframe or
the content of the statements can be gleaned from the complaint.
Moreover, absolutely no information is provided concerning where
the alleged statements occurred or even how they were
communicated, i.e., in person, over the phone, by letter, or by
email.[3]  Courts have found similar pleadings insufficient under
Rule 9(b).  See Centennial Bank v. Noah Grp., LLC, 445 F. App'x
277, 278 (11th Cir. 2011) ("While [the claimants] are correct in
stating that the amended cross-complaint did include the content
of the allegedly fraudulent statements and who made them, it
still did not include where the fraudulent statements were made

---

[3]   In its memorandum, M2M suggests that the statements were
oral.

or how they were communicated (orally or in which documents).");
Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108, 126
(D. Me. 2004) ("Plaintiffs' vague averment as to the
circumstances surrounding the alleged misrepresentation, which
does not specify a place or any specific circumstances under
which the statement was made beyond the general time frame, does
not give [the defendant] sufficient notice of the substance of
Plaintiffs' claim.").

"The major purpose of Rule 9 is to give adequate notice of
the plaintiff's claim of fraud." New England Data Servs., Inc.
v. Becher, 829 F.2d 286, 288 (1st Cir. 1987). Without more
specifics, it would be exceedingly difficult for West to provide
"meaningful responses" to the complaint's allegations. See id.
at 292. Moreover, there is no evident excuse for the
complaint's lack of detail in the present case. West's
statements were allegedly made to Mihailides, who, as an M2M
employee, was presumably available to defense counsel.

2.   Forwarded Documents

The second group of allegedly false statements is contained
in a set of documents attached to the complaint as Exhibit A.
M2M alleges that these statements, like the ones made directly
by West to M2M, falsely represented the contemporaneous value of
Showtime. The Bankruptcy Court rejected this claim, holding
that the attached documents did not, in fact, make any

6

representations regarding the boat's contemporaneous value.  The court's analysis on this point is persuasive.  See 5A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1327 (3d ed. 1998) ("The district court obviously is not bound to accept the pleader's allegations as to the effect of the exhibit [to a pleading], but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the attached material.").

The first document states that "[t]he replacement cost estimate for new build in the USA should be $4.25 million." (App. Part 1 to Appellant's Br. (Ex. A to Second Am. Compl.) 21.)  Clearly, a boat's replacement cost is not the equivalent of its current market value.

The next document represents that, when Showtime is retired in 2010, it will be offered for sale, and that four "very similar" yachts currently have asking prices ranging from $950,000 to $1,400,000.  (Id. at 22.)  It proceeds to calculate potential returns on an investment in Showtime using "the reasonable resale value of $950,000 . . . in 2010."  (Id. at 23.)  The first problem with M2M's reliance on this document is that it speaks to Showtime's value in 2010 as opposed to its present value.  Additionally, asking prices of similar boats are not necessarily equivalent to market value.

7

The third document is an agency agreement to manage the sale of Showtime at the initial asking price of $1,395,000. (Id. at 24.)  This agreement suffers from the same deficiencies as the second of M2M's proffered documents:  it speaks to the future rather than the present and concerns an asking price rather than market value.

Finally, M2M cites an email from West listing Showtime's "worst case" value as $950,000.  (Id. at 25.)  This figure, like the others, constitutes a future projection.  This fact is especially clear when the email is read in conjunction with the preceding attachments to the complaint.  Indeed, the second attachment expressly indicates that Showtime was being reconditioned and that it would be offered for sale in 2010. The forward-looking nature of the $950,000 figure is further reinforced by the email itself which projects both a "worst case" value and a "best case" value for the boat.

It is true that "[a] statement that, in form, is one of opinion, in some circumstances may reasonably be interpreted by the recipient to imply that the maker of the statement knows facts that justify the opinion."  Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990) (citing Restatement (Second) of Torts § 539 (1977)).  In the present case, however, there is simply no allegation that West's representations concerning the future value of Showtime lacked a sufficient basis.  Indeed, these

8

representations are supported by the various documents attached to the complaint.

Even overlooking this defect, at least one district court has suggested that <u>Briggs</u> does not apply to statements regarding the future value of property. In <u>Flaherty v. Baybank Merrimack Valley, N.A.</u>, 808 F. Supp. 55, 62 (D. Mass. 1992), the court rejected the plaintiffs' fraud claim predicated on a real estate broker's representation that certain condominium units "were in great demand in the rental and sales market and could be sold at a profit after one to two years of ownership." The court reasoned that predictions of possible future returns "are not susceptible of actual knowledge by anyone, even an experienced real estate broker, and therefore constitute mere opinion which cannot support a cause of action." <u>Id.</u> In a footnote, the court expressly distinguished <u>Briggs</u>, stating that "[a]bsent a showing that [the broker] possessed a crystal ball, plaintiffs could not have reasonably interpreted [her] statements to imply that she had a factual basis from which to predict future return on investment in the real estate market." <u>Id.</u> at 62 n.16.

B.   Matters Outside the Pleadings

M2M urges this Court to consider documents outside the pleadings in ruling on West's motion to dismiss. The Federal Rules of Civil Procedure provide that when "matters outside the pleadings are presented to and not excluded by the court, the

9

motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Rodi, 389 F.3d at 12 (quoting Fed. R. Civ. P. 12(b)).   However, the mere filing of matters outside the pleadings does not automatically convert a motion to dismiss into a motion for summary judgment.   See Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18 (1st Cir. 1992).   Rather, whether to make such a conversion "is a matter quintessentially within the purview of the district court's sound discretion." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).   Accordingly, the Court reviews the Bankruptcy Judge's ruling on this issue for abuse of discretion. See United States v. Harchar, 371 B.R. 254, 259 (N.D. Ohio 2007).

Here, the parties both referenced matters outside the pleadings before the Bankruptcy Court.   Nonetheless, the court expressly declined M2M's invitation to treat the instant matter as a motion for summary judgment.   In its oral decision granting the motion, the court relied exclusively on the complaint and its exhibits.   These materials are properly considered in the context of a motion to dismiss.   See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." (quoting Fed. R. Civ. P. 10(c))).   There is, thus, no

indication that the Bankruptcy Court converted West's motion into a motion for summary judgment.

Moreover, M2M presents no developed argument that the Bankruptcy Court's failure to convert the motion constituted an abuse of discretion. Indeed, M2M's proffered affidavit was executed in November 2010, and there is no apparent reason why that document could not have been attached to the complaint, which was filed in February 2012.

Beyond the materials filed and/or discussed below, M2M urges the Court to consider West's deposition testimony in a related case taken in February 2013, months after the Bankruptcy Court ruled on the instant motion. This testimony was not part of the record below and, thus, is not properly before the Court. See Colonial, 186 F.3d at 49. Moreover, West's statements constitute matters outside the pleadings which generally may not be considered in ruling on a motion to dismiss. See Trans-Spec Truck Serv., 524 F.3d at 321.[4]

---

[4] At oral argument, M2M suggested that it unsuccessfully sought to take West's deposition in this matter. M2M has, however, failed to develop, and thus waived, any argument that the Bankruptcy Court's rulings on this issue were improper.

III. Conclusion

For the foregoing reasons, the order of the Bankruptcy Court is AFFIRMED.


IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  July 15, 2013